UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHELLE S. DAILEY,
    Petitioner,

v.

TIMITHEA PULLEN,
    Respondent.

No. 3:22-cv-1121 (SRU)

**RULING ON RESPONDENT'S MOTION TO DISMISS**

Petitioner Michelle S. Dailey, currently incarcerated at Federal Prison Camp, Alderson and proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, against Timethea Pullen in her official capacity as Warden of Federal Correctional Institution Danbury, where Dailey was previously incarcerated. Dailey seeks an order directing the Bureau of Prisons ("BOP") to immediately apply her earned First Step Act ("FSA") time credits ("FSA time credits") and to recalculate her time credits. The respondent has moved to dismiss the motion. For the following reasons, the respondent's motion to dismiss is **granted**.

**I.    Background[1]**

On April 18, 2018, the government charged Dailey with conspiracy to possess with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; aiding and abetting manufacture and possession with intent to distribute a controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and use of communication facility in furtherance of a drug trafficking crime, in violation of 21 U.S.C. §§ 843(b), 843(d). *See* Superseding Indictment, Cr. Doc. No. 18. On August 27, 2019, Dailey

---

[1] I will refer to documents in Dailey's criminal case, *United States of America v. Michelle Dailey*, Dkt. No. 5:18-cr-182-SO-3 (N.D. Ohio Aug. 1, 2018), with the shorthand "Cr. Doc.," and to documents in this case without a shorthand for the case name.

pleaded guilty to all three counts.  On January 23, 2020, United States District Judge Solomon Oliver, Jr. of the Northern District of Ohio sentenced Dailey to a ninety-two-month term of incarceration, to be followed by a five-year term of supervised release.  Judgment, Cr. Doc. No. 169.  Thereafter, the BOP designated Dailey to the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury").  Cocho Decl., Doc. No. 8-2, at 2 ¶ 6.  She commenced her term of incarceration on February 25, 2020.  *Id.*

On April 22, 2022, Dailey filed with the BOP a request for informal resolution seeking the application of her time credits effective January 15, 2022.  Ex. B, Doc. No. 1, at 25.  The BOP denied the requested relief.  *Id.* at 28.  Dailey sought a formal administrative remedy, which the BOP also denied.  *Id.* at 29-30.

On September 30, 2022, Dailey filed the instant petition for writ of habeas corpus.  Doc. No. 1 ("the Petition").  United States District Judge Sarah A. L. Merriam ordered respondent warden of FCI Danbury, Timethea Pullen ("Pullen"), to show cause why the relief sought should not be granted.  Doc. No. 4.  After this case was transferred to my docket on October 5, 2022, Pullen moved to dismiss Dailey's petition.  Doc. No. 8.  Dailey filed an opposition to the respondent's motion to dismiss on November 13, 2022, doc. no. 10, which Pullen replied to on December 2, 2022, doc. no. 12.  In response, Dailey re-submitted documentation from her administrative appeal.  Sur-Reply, Doc. No. 13.

After transferring facilities on October 19, 2022, Dailey is currently confined at Federal Prison Camp, Alderson ("FCP Alderson").  Cocho Decl., Doc. No. 8-2, at 2 ¶ 6; Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed May 11, 2023).  Her original projected release date pursuant to 18 U.S.C. § 3624(b) is July 17, 2026.  Cocho Decl., Doc. No. 8-2, at 3 ¶ 12.  Her current projected date of release to prerelease custody is July 17,

2024. Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last accessed May 11, 2023).

## II. Legal Standard

A federal prisoner may petition for habeas relief if she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal citations omitted). A petition arising under section 2241 is thus the appropriate vehicle for challenging the computation of a prisoner's sentence as well as prison officials' imposition of disciplinary sanctions, including the loss of good-time credits. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (citing *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)); *Carmona*, 243 F.3d at 632.

The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## III. Discussion

A. <u>Propriety of Jurisdiction, Respondent, and Venue</u>

A writ of habeas corpus must be "directed to the person having custody of the person detained," 28 U.S.C. § 2243, and district courts may only grant habeas relief "within their respective jurisdictions," 28 U.S.C. § 2241(a). As a result, "[t]he question whether [a district court] has jurisdiction over [a] habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does [the district court] have

3

jurisdiction over him or her?" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Two default rules generally apply. One, the proper respondent is generally "the warden of the facility where the prisoner is being held." *Id*. at 435. Two, the proper venue is generally the district in which the petitioner is confined. *Id*. at 447. However, because the Second Circuit recognizes habeas jurisdiction is "not jurisdictional in the sense of a limitation on subject matter jurisdiction," *Skaftouros*, 667 F.3d at 146 n.1 (quoting *Padilla,* 542 U.S. at 451 (Kennedy, J. concurring)), habeas jurisdiction attaches on the initial filing for habeas relief, and a district court retains jurisdiction even when a petitioner is transferred after filing to the custody of a different custodian in a different judicial district. *See Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 26 n.1 (2d Cir. 2019) (summary order); *Middleton v. Schult*, 299 F. App'x 94, 95 n.1 (2d Cir. 2008) (summary order).

Here, when Dailey filed the Petition on September 30, 2022, she was confined at FCI Danbury in Danbury, Connecticut. The Petition properly named as respondent Dailey's then-custodian, Warden Pullen of FCI Danbury. Dailey properly filed the Petition in the judicial district in which FCI Danbury is located, the District of Connecticut. Accordingly, this Court initially obtained jurisdiction over the Petition, and it retains jurisdiction over the Petition even though the BOP has since transferred Dailey to FCP Alderson in West Virginia. *See Padilla*, 542 U.S. at 434-35. Even though this Court retains jurisdiction over the action, Dailey is no longer in the custody of Pullen but is instead in the custody of a warden located outside of this judicial district, and Dailey's transfer thus presents other (related) issues of habeas jurisdiction that I must also briefly address.

Under the first of the two aforementioned default rules, the "immediate physical custodian rule," a habeas petitioner challenging her "present physical confinement" generally

should file her section 2241 habeas petition against "the 'person' with the ability to produce the prisoner's body before the habeas court," the warden of the facility in which she is being held. *Padilla*, 542 U.S. at 434-35.  Challenges to sentence calculation and disciplinary loss of time credit are challenges to present physical custody subject to the immediate physical custodian rule.  *See*, *e.g.*, *May v. Licon-Vitale*, 2020 WL 8617428, at *1 (D. Conn. Sept. 1, 2020); *accord Davis v. Warden*, 2021 WL 6101457, at *1 (S.D.N.Y. Nov. 19, 2021); *United States v. Ruby*, 2010 WL 1403950, at *10 (D. Vt. Feb. 2, 2010), *report and recommendation adopted*, 2010 WL 1403948 (D. Vt. Mar. 31, 2010).  Here, Dailey brings two challenges to the calculation of her sentence, which constitute challenges to the duration of her time in custody— the application of FSA time credits and the calculation of those credits— suggesting that the Petition must be directed to the warden of the facility in which she is presently confined.

Under the second of the two default rules, the "territorial jurisdiction rule," the court "issuing the writ [must] have jurisdiction over the custodian."  *Padilla*, 542 U.S. at 442.  This is because a writ of habeas corpus operates upon the prisoner's custodian, not on the prisoner. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973).  Although neither the Supreme Court nor Second Circuit has fully-articulated the meaning of the phrase "within their respective jurisdictions" in section 2241, the interplay of the two default rules appears to require that a district court have personal jurisdiction over the petitioner's custodian to issue the mandamus sought.  Thus, when a petitioner challenges her present physical confinement, "the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent," or her immediate physical custodian.  *Padilla*, 542 U.S. at 444 (emphasis omitted).

Here, the Petition effectively seeks an order from this Court directing Dailey's custodian to apply her FSA time credits and to properly calculate those credits. Thus, Dailey's post-petition transfer raises issues analogous to personal jurisdiction and venue. *See Gooden v. Gonzales*, 162 F. App'x 28, 29 (2d Cir. 2005) (summary order) (quoting *Padilla*, 542 U.S. at 452 (Kennedy, J., concurring), for the proposition that "the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules"). Dailey is now in the custody of the warden of FCP Alderson; therefore, although the Petition complied with the immediate physical custodian and territorial jurisdiction rules at the time of filing, the Petition is no longer directed to the warden of the facility in which Dailey is currently confined and no longer seeks relief from a warden within the territorial jurisdiction of this Court.

District courts within the Second Circuit have differed with respect to whether and in what way a petitioner's post-petition transfer affects a court's authority over such a petition. Some district courts within the Second Circuit have treated a petitioner's post-petition transfer as mooting a section 2241 petition, because "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam). *See, e.g.*, *Beagle v. Easter*, 2021 WL 1026885, at *3 (D. Conn. Mar. 17, 2021) (concluding that a petition seeking admission to bail and an injunction ordering community-based medical care was rendered moot in light of the petitioner's transfer to an out-of-district detention facility); *Anderson v. Williams*, 2018 WL 4623022, at *2 (D. Conn. Sept. 26, 2018) (concluding that the petitioner's post-petition transfer to an out-of-district facility "result[ed] in the mooting of any other claims based on conditions at [the transferor] facility."); *see also Perez v. Breckon*, 2019 WL 652410, at *2 (N.D.N.Y. Feb. 15, 2019) (tentatively concluding that a petition challenging a disciplinary hearing leading to lost

good time credits should be transferred to a different judicial district in light of the petitioner's out-of-district transfer). Others have treated a post-petition transfer as effectively depriving the district court of jurisdiction over the claim. *E.g.*, *Rubbo v. Pullen*, 2022 WL 4080485, at *1 (D. Conn. Sept. 6, 2022) ("Petitioner is no longer confined in the District of Connecticut, and thus this court no longer has authority to grant him the relief he seeks.").

On the other end of the spectrum, some district courts have concluded that a post-petition transfer is of no consequence at all, because the immediate custodian rule does not apply when "the Government moves a habeas petitioner after [s]he properly files a petition naming her immediate custodian," *Padilla*, 542 U.S. at 438, 440-41 and n.14 (citing and quoting *Ex parte Endo*, 323 U.S. 283, 306-307 (1944)). Relying on that exception, which the Supreme Court originally established in *Ex parte Endo*, several district courts in the Second Circuit have concluded that "[o]nce a petition is filed, the government's decision to transfer a detainee has no effect on jurisdiction, which is retained by the district court that had jurisdiction over the proper respondent at the time of filing." *Golding v. Sessions*, 2018 WL 6444400, at *3 (S.D.N.Y. Dec. 6, 2018); *see also Tribble v. Killian*, 632 F. Supp. 2d 358, 361 and n.4 (S.D.N.Y. 2009) (in a petition challenging lost time credits, quoting the *Endo* exception, in part, for the proposition that the court with jurisdiction at the time of filing retains jurisdiction regardless of the petitioner's subsequent relocation). However, many of the decisions embracing the *Endo* exception appear to overlook that the exception only applies "where a person in whose custody [the petitioner] is remains within the district," under the theory that "the court may act if there is a respondent within reach of its process who has custody of the petitioner." *Ex parte Endo,* 323 U.S. at 306. In other words, "*Endo* stands for the . . . limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District

7

Court retains jurisdiction and may direct the writ to any respondent *within its jurisdiction* who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441 (emphasis added). Accordingly, the *Endo* exception does not appear to reach a situation where, as here, the petitioner is no longer in the custody of an in-district custodian and her custodian is beyond reach of its process, and the petition only names as respondent her custodian at the time of filing. *But see Mason v. Alatary*, 2023 WL 2965619, at *3 (N.D.N.Y. Apr. 17, 2023) (favoring a theory endorsed by some courts that "the presence of a BOP facility within the [post-transfer] jurisdiction . . . is sufficient to keep the respondent within reach [of its process] and allow the original district court to maintain jurisdiction") (quotation marks and citations omitted).

In this case, however, I do not need to wade through this thicket of unsettled law. The Second Circuit appears to have concluded that the government may waive objections to the immediate physical custodian and territorial jurisdiction rules. *See Gooden*, 162 F. App'x at 29. The government has waived any such objection here. Govt's Mot. to Dismiss, Doc. No. 8-1, at 1 n.1. Accordingly, regardless of Dailey's transfer, this Court retains jurisdiction over the Petition and can issue the relief sought, if the relief is warranted on the merits.

I turn to the merits of the Petition.

B. <u>The Merits</u>

1. *Application of First Step Act Time Credits*

In the Petition, Dailey contends that the BOP has failed to properly apply FSA time credits that she has earned and that the BOP should have applied the credits by January 11, 2022. Pet., Doc. No. 1, at 2-3. She seeks an order compelling the BOP to immediately apply the FSA time credits she earned from successful participation in a variety of BOP programs towards her immediate release. *See generally* Pet., Doc. No. 1, at 38-41. The BOP has determined that it can

apply 365 days of Dailey's earned FSA time credits prospectively toward her current projected release date, but it argues that it cannot apply Dailey's remaining forty days of earned FSA credit until Dailey has earned credits equal to the remainder of her imposed term of imprisonment. Resp.'s Mem. of Law, Doc. No. 8-1, at 6 (citing 18 U.S.C. § 3624(g)(3)).  Therefore, the Warden contends, Dailey's petition is not yet ripe under the applicable statutes and regulations implementing the FSA and/or Dailey fails to state a claim.  I agree that the Petition should be dismissed at this time.

Congress passed the First Step Act ("the Act") on December 21, 2018, which encourages individuals incarcerated in federal facilities to participate in evidence-based recidivism reduction programming and other productive activities by rewarding successful participants with time credits towards early release to prerelease custody or supervised release.  *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A); *Milchin v. Warden*, 2022 WL 1658836, at *3 (D. Conn. May 25, 2022).  But the Act expressly appears to limit when the BOP may apply FSA time credits—specifically, the Act appears to limit the BOP's ability to apply an eligible individual's time credits until the number of time credits equals the amount of time remaining on the individual's sentence.  *See* 18 U.S.C. § 3624(g)(1)(A) ("This subsection applies in the case of a prisoner . . . who has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment. . . ."); 28 C.F.R. § 523.44(b)(1).  As a result, this Court and other courts construing the Act have uniformly held that law requires the BOP to wait to apply time credits until a prisoner has earned enough time credits to end a custodial sentence immediately upon application.  *E.g.*, *Milchin*, 2022 WL 1658836 at *3 ("Until Milchin accumulates sufficient time credits to equal the remainder of his sentence, he is not eligible to have those credits applied."); *accord Glawe v. Rardin*, 2022 WL

17476545, at *3 (D. Minn. Nov. 10, 2022), *report and recommendation adopted*, 2022 WL 17466287 (D. Minn. Dec. 6, 2022); *Adkins v. Engleman*, 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022), *report and recommendation adopted*, 2022 WL 15116425 (C.D. Cal. Oct. 24, 2022); *Lallave v. Martinez*, 2022 WL 2338896 at *11 (E.D.N.Y. June 29, 2022); *Turner v. Heisner*, 2022 WL 2195348 at *3 (D. Ariz. May 16, 2022); *Stewart v. Snider*, 2022 WL 2032305, at *7 (N.D. Ala. May 10, 2022).  This requirement has a "common sense basis," that an individual may lose time credits as a sanction for misconduct while incarcerated.  28 C.F.R. § 523.43 (providing that "[a]n inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA"); 28 C.F.R. § 541.3 (providing that an inmate may lose up to forty-one days of earned FSA Time Credits as a sanction for committing a prohibited act); *see also Adkins*, 2022 WL 14966123 at *2 ("common sense basis"); *Milchin,* 2022 WL 1658836 at *3*.  As a result, although an individual may earn FSA time credits on an on-going basis, the individual is not eligible to have FSA credits applied until the time credits are equal to the individual's pending term of imprisonment.

      Here, it is undisputed that Dailey, to her immense credit, has successfully completed a variety of BOP programming.  *See* Pet., Doc. No. 1, at 10-22.  The Warden agrees that Dailey has earned a total of 405 days of FSA time credits, a calculation that excludes credits earned from April 6, 2020 to April 8, 2020, when the Warden contends that Dailey was in "refuse" status with respect to the Inmate Financial Responsibility Program; and September 19, 2020 to October 16, 2020, when Pullen contends that Dailey was in the Special Housing Unit.  Resp.'s Mem. of Law, Doc. No. 8-1, at 5 (citing Cocho Decl., Doc. No. 8-2, at ¶¶ 6, 9).  The Warden further agrees that it may prospectively apply 365 of those time credits towards Dailey's projected release date.  *Id.* at 6.  But the remaining forty days of credit, the BOP contends, are

10

not yet equal to the remainder of her imposed term of imprisonment.  *Id.* at 7.  As a result, the problem that Dailey identifies in her petition, that the credits she has earned from successful participation "have yet to be applied," doc. no. 1 at 6, is not a problem that that the Court can compel the BOP to solve at this time.

Because the relief that Dailey seeks is not available, I must dismiss the Petition.

2.  *Recalculation of First Step Act Time Credits*

In her opposition brief, Dailey newly asserts that the BOP erred by failing to award credits from two periods in which the BOP determined that she was ineligible to earn them, and she requests that: (1) the BOP correct its calculation of her FSA time credits and (2) the Court include the additional credits she is due in its order to immediately award credits.  Opp'n, Doc. No. 10, at 1.  Dailey, however, appears not to have exhausted administrative remedies with respect to that challenge.  *See* Reply, Doc. No. 12, at 2-3.  Thus, I agree with Pullen that judicial review is not appropriate at this time.

Under 28 U.S.C. § 2241, a prisoner generally must exhaust administrative remedies with the BOP before filing suit in federal court.[2]  *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).  The Court may excuse failure to exhaust administrative remedies when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996).  In general, however, the interests of judicial

---

[2] I disagree with the Warden that the exhaustion requirements of the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), apply to this habeas petition arising under section 2241.  *See Cardoza v. Pullen,* 2022 WL 3212408, at *4 (D. Conn. Aug. 9, 2022).  I do, however, agree that the Second Circuit imposes a judicial exhaustion requirement on section 2241 petitions like the instant petition.  *Id.* (citing *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)).

11

economy, accuracy, and administrative autonomy are best served by requiring a petitioner to utilize the administrative process prior to obtaining judicial review. *See Carmona*, 243 F.3d at 634.

Here, the documents that Dailey provides from her administrative appeal reveal that she has not exhausted administrative remedies with regard to the claims raised in her opposition brief. Furthermore, I see no reason that she should be excused from the administrative process. Dailey should follow the four-step process to appeal her time credit calculation to the BOP, as laid out in Pullen's reply memorandum. *See* Reply, Doc. No. 12, at 2-3.

If she proves to be dissatisfied by the BOP's determination at that time, she may pursue judicial review of the BOP's decision in a petition against the warden of the facility in which she is then confined, in the judicial district in which that facility is located.

### IV.  Conclusion

Dailey's petition for writ of habeas corpus, doc. no. 1, and the additional relief sought in her opposition brief, doc. no. 10, are **denied**. The Petition is **dismissed without prejudice**.

The Court declines to issue a certificate of appealability, finding that Dailey has not made a substantial showing of a denial of a federal right. 28 U.S.C. § 2253(c); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).

The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 15th day of May 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge